**BRANSON SCENIC RAILWAY,**
Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

**No. WD 56277.**

Missouri Court of Appeals,
Western District.

Aug. 3, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 5, 1999.

Application for Transfer Denied
Nov. 23, 1999.

Thomas Bradshaw, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

Branson Scenic Railway appeals the Administrative Hearing Commission's determination that its excursion train rides into Arkansas were amusement rides which were not exempt from sales tax as interstate commerce. The commission concurred with the Department of Revenue director's rejection of the claim. We concur and affirm the commission's determination.

Although a "judgment" as defined by Rule 74.01 has not been entered in this case, we have jurisdiction to consider the railway's appeal pursuant to Article V, § 18, of Missouri's constitution and § 621.189, RSMo 1994. Article V, § 18, says, "All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law[.]" In § 621.189, the General Assembly said, "Final decisions of the administrative hearing commission in cases arising ... under the provisions of section 621.050 shall be subject to review pursuant to a petition for review to be filed in the court of appeals in the district in which the hearing ... is held[.]" The commission held its hearing in this case in Jefferson City; hence, the appeal is properly in the Western District.

■ Article V, § 3, of Missouri's constitution grants "[t]he supreme court ... exclusive appellate jurisdiction in all cases involving ... the construction of the revenue laws of this state." This provision "speaks to the seriousness with which the people of this state view the efforts of government to reach into their pockets and pocketbooks.... [T]he people of this state intend their highest appellate court to determine the meaning and validity of laws by which the tax collector exacts tribute for the support of government." *Kuyper v. Stone County Commission*, 838 S.W.2d 436, 438 (Mo. banc 1992). We assume jurisdiction of this case nonetheless because it does not involve *construction* of a revenue law. To be a case involving construction of a revenue law, "the construction of a revenue law must itself be in issue." *Housing Authority of Poplar Bluff v. Eastwood*, 736 S.W.2d 46 (Mo. banc 1987). Construction of neither § 144.020.1, RSMo 1994, nor § 144.030.1, RSMo 1994, is at issue in this case; this case's determination turns on application of the facts of the case to the law as previously construed by the Supreme Court. *See Lynn v. Director of Revenue*, 689 S.W.2d 45 (Mo. banc 1985); *Columbia Athletic Club v. Director of Revenue*, 961 S.W.2d 806 (Mo. banc 1998).

■ At issue in this case is $100,584.59 in taxes that the Branson Scenic Railway paid on its ticket sales from August 1993 through December 1994 pursuant to § 144.020.1(2).[1] Believing its sales to have been in interstate commerce and, there-

1. That statute imposes a tax on sales "for ... fees paid to, or in any place of amusement, entertainment or recreation[.]"

fore, exempted by § 144.030.1,[2] the railway asked the director to refund the taxes. The director denied the request, and the railway appealed to the commission. The commission issued findings of fact and conclusions of law affirming the director's denial, and the railway appealed to this court. We affirm.

The dispute concerns the railway's roundtrip excursions from Branson to view the scenery of the Ozarks' foothills in southern Missouri and northern Arkansas. All of the trips began and ended at its station in Branson and typically were 40-miles long and lasted about an hour and 45 minutes. The railway preferred for its trips to travel a particularly scenic route that went 9½ miles into northern Arkansas because it perceived the scenery in Arkansas to be especially pleasing to its riders, but about three percent of the trips remained wholly in Missouri because of repair to or unavailability of tracks for the Arkansas route. It did not know until immediately before each departure whether its train would be travelling through Arkansas or remaining wholly in Missouri. If, as happened a few times, a customer asked for a refund because a trip was not going to Arkansas, the railway granted the request. On the trips to Arkansas, the railway paid sales tax to Arkansas for sales on board the train while the train was in Arkansas. The railway promoted its train rides throughout the United States and Canada, and it highlighted the appealing scenery riders would see. In the trips to Arkansas, the trains stopped at a point while the engineer moved to the other end of the train for the return trip to Branson. The stop was not at a particular station, and the railway did not permit anyone to get off the train during the brief stop. Branson was the only place where passengers could board or end their trip.

■ The railway claims exemption for its ticket sales for these trips under § 144.030.1 on the ground that, although its train was an amusement ride, the excursions were part of interstate commerce. Because the railway seeks exemption from tax, we must construe § 144.030.1 strictly against the railway, and the railway has the burden of proving that its sales were exempt. *House of Lloyd, Inc. v. Director of Revenue*, 824 S.W.2d 914, 919 (Mo. banc 1992), *abrogated in part, Sipco, Inc. v. Director of Revenue*, 875 S.W.2d 539 (Mo. banc 1994); *Mississippi River Fuel Corporation v. Smith*, 350 Mo. 1, 164 S.W.2d 370, 377 (1942). We are obligated to affirm the commission's findings of fact so long as they are supported by competent and substantial evidence. *Wetterau, Inc. v. Director of Revenue*, 843 S.W.2d 365, 367 (Mo. banc 1992). The railway does not take issue with the commission's findings of fact.

Determination of this case turns on the nature of what the director sought to tax. If it was taxing only the fee that the railway charged to get a ride on its trains, the tax was permissible as a fee paid to, or in, a place of amusement, entertainment or recreation. *Lynn*, 689 S.W.2d at 48. If, however, the director was seeking to tax the railway's fee for transporting people to see the sights in Arkansas, the tax was not permissible as a tax on sales in interstate commerce. *Id.*

We concur with the commission's conclusion that the railway's business was to entertain people by giving them rides on its railroad which most often, but not necessarily, included routes into Arkansas. It was not in the business of transporting people to particular destinations although its trips most often went the same route. It was in the entertainment business, not in the railroad business. Its train always traveled a circuitous route beginning and ending at the same point, and the railway

**2.** This statute says, "There is hereby specifically exempted from the provisions of sections 144.010 to 144.525 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.525 such retail sales as may be made in commerce between this state and any other state of the United States[.]"

never knew until immediately before leaving Branson what route that particular trip would take. It promised its customers only that it would try to travel to Arkansas, but, wherever the train went, it would end up at the same place as where it started. This makes apparent that its riders were not seeking to be transported to any particular place as much as they were wanting to be amused by a ride on the railway's train. That the train might pass by interesting scenery enhanced their entertainment, but certainly entertainment— not transportation—was their objective. The Arkansas scenery was merely part of the entertainment, but getting to Arkansas was not the object.

The Supreme Court held in *Lynn* that in such cases the director's assessment of tax on the admission fee is lawful. *Id.* In *Lynn*, the court considered fees paid for riverboat rides which crossed state boundaries. The court looked to the operation's purpose—whether it was to amuse or to transport—in deciding how to characterize the business: "Passengers do not board the vessel with the expectation that they will be carried to another port by the end of the voyage. The sole objective of boarding the vessel is for personal recreation and diversion. The use of the taxpayer's vessel and barge is not 'transportation.' Its use is for entertainment purposes[.]" *Id.* The court added:

> [I]t does not matter whether the taxpayer's services are considered transportation or otherwise interstate commerce. The business of transporting passengers is not what is being taxed. The object of the taxation ... is the admission fee charged for a place of amusement or recreation. Although admission fees to a place of amusement and items sold therein are retail sales, ... the fees charged are not retail sale transactions 'made in interstate commerce.' ... Instead, the admission fees are purely *local* transactions.

*Id.* (emphasis in original).

The railway seeks to distinguish *Lynn* by claiming that, unlike the passengers in

*Lynn*, its passengers *do* expect—even demand in some cases—that they be carried across state lines to Arkansas' scenic vistas. It argues that this rendered its business as a transportation service.

■ Not so. This is because transportation is not involved and because a business' basic purpose, and not its patrons' subjective interests, control. Transportation necessarily involves moving people and things from one port to a different port. *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 457, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894), *overruled on other grounds as recognized by United States v. Gaudin*, 515 U.S. 506, 520, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Indeed, the *Lynn* court made this distinction when it equated transportation to carrying persons "to another port by the end of the voyage." 689 S.W.2d at 48. "Transportation," in its everyday usage, is a "means of conveyance or travel from one place to another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2430 (1971). Even if some of the patrons rode the railway's train only because they wanted to see the Arkansas scenery, "the analysis under section 144.020.1(2) focuses on the basic purpose of the facility involved and not on the subjective interests of certain [patrons]." *Columbia Athletic Club*, 961 S.W.2d at 811.

Even accepting the railway's argument that its train rides had a dual purpose—amusement and transportation—would not make a difference. The Supreme Court has ruled that a business:

> [M]ay have a dual nature in that it provides both [amusement] and [non-amusement] benefits.... When considering [businesses] that have a dual nature consisting of [amusement] and [non-amusement] elements, this Court must identify the primary purpose of that [business], and in that process con-

**792**

sider how the [business] would be viewed "within normal contemplation." *Id.* at 810 (quoting *Spudich v. Director of Revenue,* 745 S.W.2d 677, 681 (Mo. banc 1988)).

Indeed, our world offers all kinds of mobile places of amusements which involve carrying people but which are not involved in the transportation business. Carousels, pony rides, riverboat rides, trail rides, miniature train rides, and the antique car ride at Worlds of Fun in Kansas City come to mind. Each offers to carry (transport) patrons in a circuitous route. Patrons see sights along the way—perhaps vistas that would not otherwise be visible. Yet, no one could argue persuasively that these rides were transportation rather than amusement. The railway's ride is much closer in its purpose and nature to the miniature train ride (*i.e.* amusement) than it is to Amtrak's passenger railroad service (*i.e.* transportation).

Individuals interested in flying in an old Constellation airliner can pay a fee to Save–a–Connie, Inc., and take a ride on one at the Kansas City Downtown Airport. The old craft will carry them into the sky much the same as it did when it was a celebrated part of TWA's fleet. Some patrons may take a ride on the old plane for the primary objective of seeing special vistas—perhaps an aerial view of their houses—and may decline the ride should they learn that the plane will not be taking them over their houses. Nonetheless, the plane ride is a mobile amusement—a flying museum, in effect. The Save–a–Connie rides are not part of an unusual airline service.

■ The lesson suggested by *Lynn, Columbia Athletic Club,* and these analogies is that business purpose—not subjective intent of patrons—controls. When a carrier offers rides for fun, as opposed to offering them for the purpose of actually getting the rider to a particular place, then the carrier is providing amusement rides. It is not in the transportation business, even though its mode of amusement is mobile.

■ The railway further argues that, because the director has declared in 12 CSR 10–3.222 that a sales tax is owing on *intrastate* transportation of persons for hire by railroads, the railway's *interstate* trips should be exempt. Again, because amusement rides, not transportation, is the purpose of these trips, the regulation is not implicated at all in this case.

■ Finally, the railway argues that imposing a tax on the full purchase price of the train ride tickets violates the Commerce Clause of the United States Constitution. We disagree. The railway paid sales tax to Arkansas on sales on board its train inside Arkansas. As the Supreme Court noted in *Lynn,* the director was assessing a tax on an admission fee to a place of amusement and this was "purely a *local* transaction." 689 S.W.2d at 48 (emphasis in original).

We, therefore, affirm the Administrative Hearing Commission's decision affirming the director's rejection of the railway's claim for a tax refund.

EDWIN H. SMITH, Presiding Judge, and FOREST W. HANNA, Judge, concur.