

# SUPREME COURT OF MISSOURI
## en banc

JESSICA CHAVEZ,                          )
                                      )
                  Respondent,          )
                                        )
v.                                          )      No.  SC93658
                                        )
CEDAR FAIR, LP,                          )
                                        )
                     Appellant.            )

### APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY
The Honorable A. Rex Gabbert, Judge

### Opinion issued November 12, 2014

Twelve-year-old Jessica Chavez sustained injuries on a ride at Oceans of Fun Water Park and filed a suit for negligence against Cedar Fair, LP, which owns and operates Oceans of Fun. Following a jury trial, judgment was entered in favor of Ms. Chavez. On appeal from that judgment, Cedar Fair claims the trial court erred in instructing the jury that its liability should be assessed using the highest degree of care standard for negligence, rather than the ordinary degree of care standard. Cedar Fair also claims the trial court erred when it refused to submit its proffered comparative fault instruction to the jury. This Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10. Because the trial court erred in instructing the jury to assess Cedar Fair's negligence using the highest degree of care standard and should have,

instead, submitted an instruction on ordinary care, the judgment is reversed and the cause remanded.

## Factual and Procedural Background

In August 2000, twelve-year-old Jessica Chavez went to Oceans of Fun in Kansas City with relatives, including her aunt and her cousins. The first and only ride Ms. Chavez rode that day was the Hurricane Falls raft ride.

Hurricane Falls is a 680-foot-long water slide ride that has a 71-foot drop and twists and turns throughout. During the ride, four to five passengers are seated cross-legged in the bottom of a circular raft. The raft descends down an open fiberglass flume, propelled only by a water flow of 8,000 gallons per minute. There are no mechanical aspects to the ride other than the conveyor that takes the empty rafts from the splash pool at the bottom of the slide back to the loading platform at the top of the slide. With the exception of the initial launch from the loading platform, ride attendants do not control the raft's descent. Rather, rafts descend variably based on the oscillation and rotation of the rafts, the contact the rafts make with the side or "splash" walls of the slide, and the contour of the layout of the ride.

The raft's only safety features are nylon webbing safety straps that run along portions of the top of the rafts. Passengers are not buckled in because of the risk of drowning if a raft were to capsize. Riders must be a minimum of 46 inches tall to ride on Hurricane Falls. Expectant mothers as well as guests with back, neck, muscular or skeletal issues are cautioned not to ride. Signage placed along the staircase leading up to the loading platform informs passengers to "hold on to straps at all times." Additional

signage informs riders that the activity rating of Hurricane Falls is "[Diamond] 5 Aggressive,"[1] and lists the ride's restrictions and rules, including that riders must "hold onto the straps at all times." Ride attendants also verbally instruct passengers before the ride begins to "hold on to the straps at all times."

When their turn came to ride, Ms. Chavez, her aunt, and two cousins were seated as instructed by a ride attendant, with Ms. Chavez seated directly across from one of her cousins. As their raft rode up the splash wall on the final turn, Ms. Chavez's mouth and her cousin's head collided. Due to the impact, Ms. Chavez's braces were pushed up into her gums and her front tooth was knocked out. These injuries subsequently required extensive dental work, including the removal of two more front teeth and the use of dentures.

In 2005, Ms. Chavez filed a petition for damages claiming Cedar Fair failed to exercise the care required and was negligent in one or both of the following respects: (1) failing to provide friction devices reasonably sufficient to prevent a raft rider from colliding with another rider and (2) failing to adequately warn of the risk of harm from colliding with other raft riders. The case proceeded to trial in 2012.

At trial, conflicting testimony was given regarding how the collision happened and whether Ms. Chavez, or both or either of her cousins, voluntarily or involuntarily let go of the raft's safety strap. Both parties also presented expert testimony to address the

---

[1] Oceans of Fun uses an internal grading scale of 1 to 5 to rate the aggressiveness or thrill level of its rides. A ride rated as a "5" is considered to be the most aggressive, meaning that the ride could involve "high speeds," "heights," "aggressive and unexpected forces," and "rapid directional changes."

adequacy of the ride's safety features and measures taken by Cedar Fair to ensure passenger safety. On her negligence claim, the trial court instructed the jury as follows: "[T]he term 'negligent' or 'negligence' as used in these instructions means the failure to use the highest degree of care. The phrase 'highest degree of care' means that degree of care that a very careful person would use under the same or similar circumstances." Cedar Fair objected to the instruction on the ground that it presented the incorrect standard of care, as ordinary care was the proper standard. The trial court overruled Cedar Fair's objection, and the highest degree of care instruction was submitted to the jury.

In addition to objecting to the submitted instruction regarding the standard of care, Cedar Fair also proffered an instruction requiring the jury to determine Ms. Chavez's percentage of fault, if any. Cedar Fair argued there was sufficient evidence that Ms. Chavez voluntarily let go of the raft's safety strap despite repeated warnings to "hold onto the straps at all times," thereby negligently contributing to the cause of her injuries. The trial court refused to submit the comparative fault instruction to the jury because it found that strained inferences and conflicting testimony failed to sufficiently establish these facts.

The jury returned a verdict in favor of Ms. Chavez in the amount of $225,000, and the trial court entered judgment accordingly. Cedar Fair appeals. On appeal, Cedar Fair asserts the trial court erred in submitting a jury instruction that defined "negligence" as the failure to use the "highest degree of care." Instead, Cedar Fair argues that "ordinary care" is the proper negligence standard for operators of water slides and similar

amusement activities. Cedar Fair also claims the trial court erred in refusing to submit its proffered comparative fault instruction to the jury. Cedar Fair argues that sufficient evidence exists that Ms. Chavez voluntarily and negligently let go of the raft's safety straps despite repeated warnings to hold on, warranting the submission of the comparative fault instruction.

## Standard of Review

The appropriate standard of care is a question of law. *Lopez v. Three Rivers Elec. Co-op., Inc.,* 26 S.W.3d 151, 158 (Mo. banc 2000). Similarly, whether the jury was properly instructed is a question of law that is reviewed *de novo. Coomer v. Kansas City Royals Baseball Corp.,* 437 S.W.3d 184, 191 (Mo. banc 2014). This Court will only vacate a judgment on the basis of an instructional error if that error "materially affected the merits of the action." *Id.* Accordingly, "the party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* (citation omitted).

## Negligence Degree of Care Standard for Amusement Rides

In its first assertion of error, Cedar Fair claims that the trial court erroneously instructed the jury that it owed Ms. Chavez the "highest degree of care" as defined in MAI 11.03, rather than the "ordinary degree of care" as defined in MAI 11.05 or 11.07. Cedar Fair contends that the trial court's submission of the "highest degree of care" was contrary to this Court's precedent in *McCollum v. Winnwood Amusement Co..* 59 S.W.2d 693 (Mo. 1933).

The common law ordinary negligence rule requires a defendant to exercise the degree of care of a reasonable person of ordinary prudence under similar circumstances, now commonly referred to as the "ordinary degree of care." While the facts underlying each situation "may not alter the legal standard of care required to avoid an accident," the underlying facts "often multiply the precautions that must be observed to comply with the standard[.]" *Fortner v. St. Louis Pub. Serv. Co.*, 244 S.W.2d 10, 13 (Mo 1951). In *Berberet v. Electric Park Amusement Co.*, 3 S.W.2d 1025, 1029 (Mo. 1928), the ordinary duty of care is further defined as a duty created by the particular "nature of the object, and of its use by the plaintiff." In other words, ordinary care is a relative term; "it is a care commensurate with the particular conditions and circumstances involved in the given case*." Id.* This Court has applied this degree of care to almost all negligence cases, reserving the higher degree of care to a very small number of well-defined activities.

This Court in *McCollum* rejected the highest degree of care standard for amusement park operators and held that they owe only a duty of ordinary care to their patrons. In *McCollum,* the plaintiff, a young girl, suffered a broken leg after catching it in an open handrail at the top of a waterslide owned and operated by the defendant, an amusement company. 59 S.W.2d at 694-95. The plaintiff alleged that the defendant was liable for negligent construction, maintenance, and operation of the slide. The trial court ruled in the girl's favor. *Id.* at 694. On appeal, the Court considered whether the verdict director was improper because it allowed the jury to find the defendant negligent if the jury found that plaintiff was injured from the condition of the slide as constructed. *Id.*

The degree of care submitted in the verdict director, defining negligence as "the duty of ordinary or reasonable care," was not at issue. In holding that the instruction was improper because it did not allow "reasonable minds [to] differ as to whether [the slide's] condition showed or constituted negligence," the Court noted the proffered duty of care was correct insofar as the instruction "very properly told the jury that defendants in operating for hire a place of public amusement owned the patrons the duty of using ordinary or reasonable care for their safety." *Id.* at 697.

The statement in *McCollum* that the operator of a place of public amusement has a duty of ordinary care to its patrons was consistent with the Court's prior holding in *Berberet*, a negligence action against the operator of an amusement park. 3 S.W.2d at 1029. In *Berberet*, the plaintiff sued the defendant for negligence after the plaintiff stumbled over an unfastened board on the defendant's boardwalk, injuring herself. *Id.* at 1028. In discussing the appropriate duty of care, the Court stated that "[t]he rule in this state, and generally, is that the proprietor of a place of amusement owes to his patrons that duty which, under the particular circumstances, is ordinary care or reasonable care for their safety." *Id* at 1029.

The application of the ordinary degree of care standard as first articulated in *Berberet* has been followed by this Court in other decisions pertaining to the liability of both owners and operators of places of amusement. For example, in *Kungle v. Austin*, 380 S.W.2d 354 (Mo. 1964), in a negligence suit against the owners of an indoor trampoline center, the Court held "[t]he proper test of the defendant's conduct as negligence was whether or not they exercised the care which a *reasonable person* would

exercise under like circumstances." Similarly, in *Gold v. Heath*, 392 S.W.2d 298, 302 (Mo. 1965), in a negligence action stemming from an injury occurring on a merry-go-round, this Court held, "[i]n Missouri the owner of a . . . place of public amusement must exercise ordinary or reasonable care for the safety of patrons." Additionally, this Court held that a swimming pool operator was "bound to use reasonable care" in *Boll v. Spring Lake Park, Inc.*, 358 S.W.2d 859, 862 (Mo. 1962), and that a baseball club owed a duty of ordinary care to a spectator in *Hudson v. Kansas City Baseball Club*, 164 S.W.2d 318, 320 (Mo. 1942).

Moreover, the court of appeals, consistent with the precedent of this Court, has held that ordinary care is appropriate for operators of amusement activities ranging from snow skiing to a mechanical punching game. In *Lewis v. Snow Creek, Inc.,* 6 S.W.3d 388, 392 (Mo. App. 1999), a duty of ordinary care was applied to a ski park when skiers were injured due to falls during icy conditions. The court of appeals held that the operator of a skating rink owed a duty of ordinary care in a negligence action by plaintiff who suffered injuries while skating in *Schamel v. St. Louis Arena Corp.*, 324 S.W.2d 375, 378 (Mo. App. 1959). Finally, in *Moordale v. Park Circuit & Realty Co.*, 58 S.W.2d 500, 501 (Mo. App. 1933), a duty of ordinary care was applied to a park operator in an action by a plaintiff who broke his arm playing a mechanical game.

In contrast to the broadly applicable ordinary degree of care standard, the standard of a higher degree of care first arose in Missouri in 1866 in the narrow context of what is now known as "common carrier liability." Recognizing the danger of steam railroads, this Court held that those who "undertake to carry persons by the powerful and dangerous

agent of steam" are held to "*the greatest possible care and diligence*." *Sawyer v. Hannibal St. J.R. Co.*, 37 Mo. 240, 260 (1866). This Court would continue to apply this "common carrier" liability to other modes of transportation as they became available, including elevator operators, streetcars, railroads in addition to steam railroads, commercial airlines, and buses. *See, respectively, Goldsmith v. Holland Bldg. Co.*, 81 S.W. 1112, 1114 (Mo. 1904); *Gott v. Kansas City Rys. Co.*, 222 S.W. 827 (Mo. 1920); *Nix v. Gulf, M. & O. R. Co.*, 240 S.W.2d 709, 717 (Mo. 1951); *Atcheson v. Braniff Int'l Airways*, 327 S.W.2d 112 (Mo. 1959); *McVey v. St. Louis Pub. Serv. Co.*, 336 S.W.2d 524, 527 (Mo. 1960).

Outside of the aforementioned common carriers, this Court has applied the highest degree of care standard to only a few other situations. Specifically, the highest degree of care standard has only been applied to: (1) electric companies; (2) users of explosives; (3) users of firearms; and, (4) motor vehicle operators. *See, respectively, Burk v. Missouri Power & Light Co.*, 420 S.W.2d 274, 277 (Mo. 1967); *Mooney v. Monark Gasoline & Oil Co.*, 298 S.W. 69, 78 (Mo. 1927); *McLaughlin v. Marlatt,* 246 S.W. 548, 553 (Mo. 1922); *Jarrett v. Jones,* 258 S.W.3d 442, 448 (Mo. banc 2008). The public policy behind extending the "highest degree of care" standard beyond common carriers has remained the same: At the time the highest degree was applied, the activities were considered to be either so inherently or extremely dangerous, with such a risk of widespread injury, that the law required heightened protection. *See Id.*

In determining the appropriate degree of care to be applied to amusement parks, this Court has never found that that the public policy underlying the use of the highest

degree of care supports its application to amusement park operators. While acknowledging this law, Ms. Chavez, nevertheless, asserts that the jury was properly instructed to impute the "highest degree of care" to Cedar Fair. Ms. Chavez cites three decisions from the court of appeals that find the operator of an amusement park should be held to the highest degree of care. *Gromowsky v. Ingersol*, 241 S.W.2d 60, 63 (Mo. App. 1951); *Cooper v. Winnwood Amusement Co.*, 55 S.W.2d 737, 742 (Mo. App. 1932); *Brown v. Winnwood Amusement Co.*, 34 S.W.2d 149, 152 (Mo. App. 1931). Ms. Chavez contends that these decisions best articulate the proper rule for the jury instructions in this case—that an operator of an amusement park should be held to the highest degree of care. Ms. Chavez argues that unlike *McCollum*, these cases draw a necessary distinction between *owners* of amusement parks, who only owe patrons an ordinary duty of care for the maintenance and construction of an amusement park's premises, and *operators* of amusement parks, who owe patrons the highest degree of care in their operation of rides like Hurricane Falls. *See Gromowsky*, 241 S.W.2d at 63; *Cooper*, 55 S.W.2d at 742; *Brown*, 34 S.W.2d at 152. Notably, only one of the cases Ms. Chavez relies upon was decided after this Court's holding in *McCollum*.

In *Brown*, a case decided two years before *McCollum*, the plaintiff was injured when the roller coaster gave a sudden and unexpected jerk. 34 S.W.2d at 151. Importantly, the proper degree of care owed by owners and operators of amusement parks was not directly at issue in *Brown.* Nevertheless, in discussing whether the plaintiff could proceed under a theory of *res ipsa loquitur*, the court explained:

> There have been several cases before the higher courts of this country involving devices similar to the one in the case at bar and, while the courts have been slow in holding that the operator of such devices is technically a common carrier and that all the rules governing such carriers are applicable to him, they do hold *that the rule in reference to the degree of care required of a common carrier applies to the operation of such devices*[.]

*Id.* 34 S.W.2d at 152 (emphasis added) (citations omitted). In so likening amusement park operators to common carriers, the *Brown* court articulated in dictum their support for applying the highest degree of care to amusement park operators.

Similarly, in *Cooper,* decided shortly after *Brown* but before *McCollum,* a plaintiff suffered injuries to her vertebrae when her buttocks hit the seat of the defendant's rollercoaster "with great force" during a ride. 55 S.W.2d at 739. This time, unlike in *Brown,* the question directly before the court of appeals was the proper degree of care owed by an amusement park owner and operator to its patrons. *Id*. at 742. In *Cooper,* the court rejected the applicability of this Court's holding in *Berberet*, grouping it with other cases that "do not apply here."[2] *Id.* Instead, the court found the roller coaster to be a quasi-common carrier similar to a scenic railway in an amusement park, citing 10 C.J. *Carriers* § 1035 (1917) as stating the "general rule" that "[t]he owner and operator of a scenic railway in an amusement park is subject, where he has accepted passengers on such railway for hire, to the liabilities of a carrier of passengers generally." This Court,

---

[2] The court of appeals did not elaborate on its reasoning for disregarding *Berberet. Cooper*, 55 S.W.2d at 742. Given, however, that the court of appeals focuses its reasoning on the role of the ride operator as a quasi-common carrier, who has "accepted passengers" in an "apparatus under the control and management of the operator," one can reasonably infer that it dismissed *Berberet* for being factually and legally distinguishable, with the underlying claim in *Berberet* stemming from premises liability, not the negligent construction of an amusement park ride. *Id*.

in *Pointer v. Mountain Ry. Const. Co.*, 189 S.W. 805, 813 (Mo. 1916), had, however, already held that scenic railways and other "pleasure devices, the objects and purposes of which are to furnish sensational experiences for pleasure seekers," including swings and toboggan slides, were not "common carriers of passengers in any sense of the word." Despite this, the *Cooper* court excluded *Pointer* in its decision because "the [*Pointer*] decision was by a divided court, and nothing was established except (1) that specific acts of negligence were pleaded, therefore the rule of res ispa loquitur did not apply, and (2) the proof failed to show any unusual occurrence." *Cooper*, 55 S.W.2d at 742. With little additional analysis, the *Cooper* court merely affirmed the holding in *Brown*, stating that "the operators of such devices as the 'Whirl Winn' are required to use the highest degree of care for the safety of their passengers." *Id.*

In *Gromowsky*, a wire cable suspending an airplane swing broke, causing a metal bar to strike and injure the plaintiff's back. Despite being decided well after *McCollum*, and in direct contradiction of this Court's holding that an operator of a waterslide at an amusement park owed only the duty of ordinary care to its patrons, the court of appeals once again affirmed the holding in *Brown* that an amusement park operator owes a duty to operate its rides with the highest degree of care. 241 S.W.2d at 63. The defendant in *Gromowsky*, like in each of the aforementioned cases, was an amusement park operator facing allegations that a plaintiff's injuries were the result of negligence on behalf of the amusement park. *Id.* at 62-63. And, like in the present case and *McCollum*, the defendant in *Gromowsky* contended that the jury was erroneously instructed. *Id.* The defendant specifically contended that the instruction was "erroneous and misleading

because it presents a shaded and colorful description of the degree of care; that it overemphasizes the defendant's duty" by providing that "it was the duty of the defendants to manage and operate its said seaplane ride with the highest degree of a very prudent person engaged in like business, in view of all the facts and circumstance." *Id.* at 62-63.

Once again quoting *Brown,* the court determined that "the degree of care required of a common carrier applies to the operation of [amusement] devices." *Id.* at 152 (internal quotations omitted). Seemingly, confronted with an argument that the highest degree of care was not well-defined in the jury instruction, the court went on to articulate what the highest degree of care requires:

> "A high degree of care"; "the utmost degree of care of very prudent persons"; "the greatest possible care and diligence"; "great care"; "such care as a very prudent person would exercise under similar circumstances"; "the highest degree of care that can be reasonably expected of prudent, skillful and experienced persons"; "the highest degree of care practicable among prudent and skillful men in that business."

*Gromowsky*, 241 S.W.2d at 63. As with the cases before it, *Gromowsky* offered no reasoning to support its finding that the highest degree of care was proper in negligence actions against amusement parks. Likewise, the court offered neither mention nor analysis of this Court's holding in *McCollum*, which clearly expressed an ordinary degree of care standard for those "operating for hire a place of public amusement." *McCollum*, 59 S.W.2d at 697.

Ms. Chavez argues that the application of the higher degree of care to the present case is not only supported by the holding in *Brown, Cooper,* and *Gromowsky* but should

be distinguished from *McCollum* and *Berberet* because the latter two cases are premises liability cases pertaining to the negligent *construction* of the premise against amusement park owners rather than the negligent *operation* of the amusement against its operators. This, however, misstates the plaintiff's claims in *McCollum*, because the plaintiff alleged "the defendants constructed, maintained, and operated a device or sliding chute." *McCollum*, 59 S.W.2d at 694. Additionally, this Court, recognized no such in distinction in *McCollum* when it held that "defendants *operating* for hire a place of public amusement owed the patrons the duty of using *ordinary* or *reasonable care* for their safety[.]" *McCollum*, 59 S.W.2d at 697 (emphasis added). There, the plaintiff submitted a claim for negligence when she injured her leg in an attempt to slide down a waterslide, similar to Ms. Chavez's injury to her mouth when sliding down Hurricane Falls. *Id.* at 695. Moreover, Ms. Chavez's attempt to distinguish *McCollum* as a "negligent construction" case, thereby arguing that its holding is inapplicable to her case, is unsound because Ms. Chavez herself claimed that the rafts on Hurricane Falls were negligently constructed due to their lack of "friction devices."

Not only is *McCollum* most similar to the case at hand—collectively in terms of the injurious event, the negligence claims asserted, and the issue raised on appeal—it is a decision of this Court and as such is controlling. "It is the duty of all inferior courts . . . to follow the decision of the Supreme Court en banc." *Smith v. St. Louis Pub. Serv. Co.*, 259 S.W.2d 692, 694 (Mo. banc 1953). In addition, *McCollum,* decided by this Court after *Brown* and *Cooper,* effectively overruled those cases when it held that the duty of ordinary care is the proper duty owed by owners and operators of amusement parks to

their patrons. Consequently, in *Gromowsky*, when the court of appeals affirmed its prior ruling in *Brown* without recognizing *McCollum*, it improperly ruled contrary to this Court's established precedent regarding the duty of care owed by operators of amusement parks.

Applying the ordinary degree of care in the present case is in accordance with this Court's precedent. As previously discussed, Missouri has held defendants in a negligence action to the highest degree of care only in limited circumstances. The application of the highest degree of care has remained reserved for either activities that are so inherently dangerous as to have the potential to cause widespread injury or for those that fall within a narrowly tailored group of common carriers. This Court's application of the ordinary duty of care is supported by the facts that Cedar Fair is not a common carrier and the ride is not inherently dangerous.

In fact, Ms. Chavez does not assert that Cedar Fair is operating the Hurricane Falls raft ride as a "common carrier" under Missouri law. For 80 years, Missouri has consistently defined common carrier as: "anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods [or passengers] from place to place . . . and so invites custom of the public." *Balloons over the Rainbow, Inc. v. Dir. of Revenue,* 427 S.W.3d 815, 826 (Mo. banc 2014) (quoting *State ex rel. Anderson v. Witthaus,* 102 S.W.2d 99 (Mo. banc 1937); *see also Cook Tractor Co., Inc. v. Dir. of Revenue*, 187 S.W.3d 870, 873-74 (Mo. banc 2006). Indeed, Missouri courts have consistently refused to classify entities as "common carriers" unless they fall squarely within the traditional definition. *Id.*

This established definition of "common carrier" does not, as an overall rule, encompass an amusement park that operates attractions for the purpose of providing amusement to patrons. *Branson Scenic Railway v. Dir. of Revenue*, 3 S.W.3d 788, 791-92 (Mo. App 1999).[3] This Court finds convincing the reasoning employed by the court of appeals in *Branson*, that when the primary business purpose of a ride is "for fun, as opposed to . . . getting the rider to a particular place, then the carrier is providing amusement rides. It is not in the transportation business, even though its mode of amusement is mobile." *Id.* at 792. In addition, Hurricane Falls specifically cannot fall under the common carrier definition, because it does not hold itself out to carry "everyone who asks," but exercises discretion by excluding those who do not meet the height requirement of 46 inches. *See Balloons over the Rainbow, Inc.,,* 427 S.W.3d at 826-27 (holding that a hot air balloon operator was not a common carrier because it exercised discretion regarding which passengers to fly).

Likewise, Missouri case law does not support the extension of the duty to exercise the highest degree of care to amusement park operators under the rationale that they are "inherently dangerous" or otherwise so essential as to warrant an elevated degree of care. The public policy that resulted in the application of the highest degree of care to

---

[3] The court in *Branson Scenic Railways* interpreted the term "common carrier" in construing a revenue statute, not in association with negligence liability. 3 S.W.3d at 791-92. Nevertheless, the accepted definition of a "common carrier" and its application has remained consistent across all areas of the law. *See e.g. State ex rel. Star Pub. Co. v. Associated.* Press, 60 S.W. 91 (Mo. 1900) (contract law); *State ex rel. Anderson*, 102 S.W.2d 99 (criminal law); *Cook Tractor Co, Inc.*, 187 S.W.3d 870 (tax law, discussing dictionary definitions of "common carrier" and stating that Missouri case law is "consistent" with these dictionary definitions).

electricity, explosives, firearms, and motor vehicles is the same: At some point, these essential activities were considered to be so inherently or extremely dangerous, with such a risk of widespread injury to the public, that the law required the public to be protected from even the slightest negligence. For example, this Court applied the highest degree of care to an electric utility because "[e]lectricity is one of the most dangerous agencies ever discovered by human science[.]" *Geisman v. Missouri Edison Elec. Co.*, 73 S.W. 654, 659 (Mo. 1903). Similarly, the inherently dangerous qualities of firearms and explosives have also warranted the highest degree of care. In *Paisley v. Liebowits*, 347 S.W.2d 178, 183 (Mo. banc 1961), this Court noted the "highly dangerous" nature of explosives. In *McLaughlin*, 246 S.W. at 553, this Court discussed the "dangers attendant upon the use of firearms." Finally, upon the widespread use of automobiles in the early 1900s, the legislature required automobile operators to exercise the highest degree of care, as it was a matter of concern that millions of motor vehicles would travel highways everyday posing a new and potentially deadly risk daily. RSMo § 8523 (1909); *see also Hay v. Ham*, 364 S.W.2d 118, 121-22 (Mo. App. 1962).

Unlike the danger posed by an electric utility during the early stages of its entry into American homes and businesses, the obvious threat posed by the operation of firearms, or the risk associated with the operation of an automobile, amusement rides are not such new, dangerous, or essential technology that they justify the highest degree of care. While there are, of course, dangers associated with riding amusement rides, the ordinary degree of care is sufficiently flexible to adequately protect amusement park patrons because "ordinary care is a relative term, and its exercise requires precautions

commensurate with the dangers to be reasonably anticipated under the circumstances." *Fortner*, 244 S.W.2d at 13. Accordingly, this Court finds that the trial court erred in submitting a jury instruction with the "highest degree of care."

An erroneous instruction "that imposes upon a party a standard of care higher than that required by law is prejudicial, requiring a new trial." *Lopez*, 26 S.W.3d at 158 (citations omitted). Cedar Fair was prejudiced by the submission of the verdict director imposing the highest degree of care and is entitled to have the judgment reversed and the cause remanded.

## Comparative Fault Instruction

Cedar Fair also claims that the trial court erred by refusing to instruct the jury on Ms. Chavez's comparative fault. Cedar Fair proffered a jury instruction based on a modification of MAI 32.01(1) (1991 Revision), asking the jury to assess a percentage of fault to Ms. Chavez if it found she was negligent in failing to hold on to the raft pursuant to Cedar Fair's instructions. The circuit court refused to submit this instruction to the jury. The circuit court indicated that the insufficiency of evidence was its basis for refusing to submit the instruction, referring to the "multiple inferences" upon which the case rested and testimony that was "different as to the different reasons." The court of appeals affirmed, explicitly citing an insufficiency of evidence because "there [was] simply no evidence to suggest Respondent either negligently or unreasonably let go of the straps."

Cedar Fair argues that this basis for rejecting the comparative fault instruction is erroneous as it requires Cedar Fair to prove Ms. Chavez's subjective reason for her

behavior even though negligence is an objective evaluation of conduct and there is substantial objective evidence that Ms. Chavez let go of the safety straps. Cedar Fair contends that, because the evidence is sufficient when viewed in the light most favorable to Cedar Fair, Ms. Chavez's damages were caused by her own negligence in letting go of the straps. Cedar Fair argues that it was entitled to have a comparative fault instruction submitted to the jury.

Cedar Fair correctly states the law that the standard for comparative fault for a child is an objective standard, which does not require evidence of the child's subjective state of mind. Nevertheless, because this Court has reversed the judgment against Cedar Fair for the submission of the erroneous verdict instruction that misstated the degree of care standard, the sufficiency of evidence to submit a comparative fault instruction must be determined based on consideration of the evidence presented in the new trial. Likewise, Cedar Fair will have an opportunity to submit a different comparative fault instruction during the retrial that can address Ms. Chavez's challenge to the form of its instruction.[4] Therefore, it is not necessary for this Court to adjudicate the merits of Cedar Fair's claim of error related to the circuit court's refusal of its comparative fault instruction.

---

[4] Ms. Chavez correctly states that Cedar Fair failed to submit legally correct instructions when it failed to define "negligence" in terms of an "ordinarily careful girl or boy of the same age, capacity and experience," as required by MAI 32.01(1) Notes on Use (1991 Revision) and MAI 11.04.

**Conclusion**

This Court finds that the trial court erred in instructing the jury that Cedar Fair owed the highest degree of care to Ms. Chavez because the ordinary duty of care is the proper duty of care in a negligence action against an owner or operator of an amusement park. Accordingly, the judgment is reversed and the cause remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

Russell, C.J., Fischer, Stith and
Wilson, JJ., concur; Teitelman, J.,
dissents in separate opinion filed;
Draper, J., concurs in opinion of
Teitelman, J.



# SUPREME COURT OF MISSOURI
## en banc

JESSICA CHAVEZ, )
)
        Respondent, )
)
v. ) No. SC93658
)
CEDAR FAIR, LP, )
)
        Appellant. )

Dissenting Opinion

I respectfully dissent from the holding that the trial court erred in instructing the jury that Cedar Fair's liability should be assessed using the highest degree of care standard for negligence. While Ms. Chavez freely chose to ride the Hurricane Falls water slide, it is also true that Cedar Fair invites its customers to ride the 680-foot-long slide and that the slide is under Cedar Fair's complete control as the owner and operator of the slide. Given Cedar Fair's complete control and Ms. Chavez's complete lack of control, Cedar Fair should be held to the highest standard of care.

The principal opinion relies on *McCollum v. Winnwood Amusement Co.*, 59 S.W.2d 693 (Mo. 1933), for the proposition that amusement park proprietors owe a duty of ordinary care. *McCollum* does not stand for the proposition that ordinary care is the exclusive standard of care for amusement park proprietors. To the contrary, just five

years before *McCollum* was decided, this Court noted that, while amusement park proprietors generally owe patrons a duty of ordinary care, the general rule yields to the specific activity at issue. *Berberet v. Electric Park Amusement Co.*, 3 S.W.2d 1025, 1029 (Mo. 1928). While ordinary care is the starting point, the appropriate standard of care in a particular case is "a care commensurate with the particular conditions and circumstances involved in the given case." *Id.*

In this case, Ms. Chavez alleged that her injuries were caused by Cedar Fair's negligent operation of the Hurricane Falls water slide and, further, that she was dependent on Cedar Fair for her safety because Cedar Fair controls the slide as both owner and operator. Under these circumstances, I would hold, consistent with previous cases from Missouri and elsewhere, that the trial court did not err in instructing the jury that Cedar Fair had a duty to operate Hurricane Falls with the highest degree of care.[1]

_____

RICHARD B. TEITELMAN, Judge

---

[1] The Missouri Court of Appeals applied the highest standard of care in the following amusement park cases: *Gromowsky v. Ingersol*, 241 S.W.2d 60, 63 (Mo. App. 1951); *Cooper v. Winnwood Amusement Co.*, 55 S.W.2d 737, 742 (Mo. App. 1932); *Brown v. Winnwood Amusement Co.*, 34 S.W.2d 149, 152 (Mo. App. 1931). Likewise, other states have also required amusement park proprietors to abide by the highest standard of care. *See, .e.g. Gomez v. Superior Court*, 35 Cal. 4th 1125, 1136 (Cal. 2005); *Lewis v. Buckskin Joe's, Inc.*, 396 P.2d 933, 939 (Colo. 1964); *Brennan v. Ocean View Amusement Co.*, 194 N.E. 911, 913 (Mass. 1935); *Lausterer v. Dorney Park Coaster Co.*, 100 Pa. Super. 33, 37 (Pa. 1930) (applying a "strict measure of duty").