

# In the
# Missouri Court of Appeals
# Western District

JOSEPH F. WAGNER, JR. REVOCABLE
TRUST U/A,

        **Respondent,**

v.

CAMERON COLBY THOMSON AND
HONEST POLICY, INC.,

        **Appellants.**

**WD81512**

**OPINION FILED:**

**AUGUST 6, 2019**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jennifer M. Phillips, Judge**

**Before Division Three: Thomas H. Newton, Presiding Judge, Anthony Rex Gabbert, Judge,**
**Edward R. Ardini, Jr., Judge**

Cameron Colby Thomson and Honest Policy, Inc. ("Appellants" collectively) appeal from

a judgment entered upon a jury verdict finding in favor of Joseph F. Wagner, Jr. Revocable Trust

U/A Dated 11/11/2002 ("Respondent Trust") on its Petition for Damages alleging breach of

contract, unjust enrichment, and quantum meruit.[1]  Appellants contend the circuit court erred in,

1) giving verdict directing instructions regarding both breach of contract and unjust enrichment

because the instructions submitted mutually exclusive and inconsistent theories of recovery

thereby misstating applicable law, misdirecting the jury, and resulting in prejudicial error, 2) giving

---

[1] Respondent's quantum meruit claim was abandoned at trial.

verdict directing instructions regarding both breach of contract and unjust enrichment because such directed the jury to find for Respondent Trust if it found there was a contract, and also if it found there was no contract, thereby submitting both theories of recovery in the conjunctive in violation of MAI 1.02, and 3) submitting conjunctive instructions prohibited by MAI 1.02 in one verdict form thereby forcing the jury to find a verdict in favor of Respondent Trust on two separate claims and making it impossible to determine what the jury did in fact find. We affirm.

## Factual Background and Procedural History

Joseph Wagner, Jr. established Respondent Trust on November 11, 2002. On March 15, 2009, Joseph Wagner, Jr. died and his son, Stephen Wagner, became trustee of Respondent Trust and executor of his father's estate. Respondent Trust was the sole beneficiary of Joseph Wagner's estate; beneficiaries under the trust were Stephen and Stephen's four children. Stephen was retired and had relatively few assets other than the money in Respondent Trust; Stephen could only distribute money to himself from Respondent Trust if it was for Stephen's health, welfare, maintenance, or education. Consequently, Stephen had a "maintenance" account set up for himself which received Respondent Trust transfers to pay living expenses.

Honest Policy, Inc. is a Delaware corporation registered to do business in Nebraska; Cameron Colby Thomson ("Colby")[2] is a founder and shareholder of Honest Policy, Inc. In 2007, Stephen Wagner married Colby's mother, Deborah Thomson. In 2012, Deborah came to Stephen and told him that Colby was in urgent need of money; Honest Policy needed funds to make its payroll obligations. Stephen told Deborah that he thought taking money from the trust might be

---

[2] As several individuals herein share the same last name, Cameron Colby Thomson will be referenced as "Colby," the name Appellants use in their appeal brief. Other individuals sharing last names will be referenced by first names. No disrespect or familiarity is intended.

2

unethical. Deborah had Stephen talk to Colby directly and Stephen initially told Colby that he did not think he could loan the money. Stephen had a good relationship with Colby and testified that "after some very upsetting lobbying on the part of his mother, I agreed."

Stephen testified that he and Colby reached an agreement over the telephone for Respondent Trust to loan money to Honest Policy and Colby jointly. The consideration for the loan was that Respondent Trust would earn interest on the loan. Colby offered a rate of interest between seven to eight percent, with repayment not to exceed four years. A single, lump sum repayment of the principal and interest would be made to Respondent Trust. Stephen did not agree for the loan to be repaid to anyone other than Respondent Trust.

Stephen testified that, as trustee of Respondent Trust, Stephen authorized a $100,000 loan from Respondent Trust to Colby and Honest Policy. The transfer of $100,000 occurred on May 4, 2012. Stephen had the money deposited into Stephen's maintenance account and then transferred the funds to Honest Policy. The $100,000 came from liquidating Edward Jones stocks that were required under Joseph Wagner, Jr.'s will to be placed in Respondent Trust upon liquidation.

Colby agreed to provide paperwork to memorialize the loan but provided nothing until 2015. In February 2016, Stephen sent a written inquiry to Colby asking if he would be able to make payment of the obligation by the May 9, 2016, maturation date. By that time, Stephen and Deborah were in the middle of a divorce (filed by Stephen in 2015). Colby responded that he was obligated to pay for his mother's full expenses and, therefore, would "probably have expended approximately the balance of the loan to her by May anyhow. If you count that, then, yes."

Colby testified at trial that he believed the $100,000 originated from Stephen and Deborah, not Respondent Trust. Colby testified, "There's no reason I would pay the trust. They've never been involved in this issue. And my agreement with Steve was to pay my mother." (Colby stated

3

that repayment was to be a "nest egg" for Deborah because she had no money.) Although Appellants admitted in answer to Respondent Trust's petition that they had agreed to repay $100,000 with accrued interest within four years, Colby testified the arrangement was not initially a loan and gave several explanations as to what he believed the arrangement was. At one point Colby testified that Honest Policy owed no one $100,000 because the money was a twenty-four-month loan that converted to equity at the end of twenty-four months. Regardless, Colby ultimately contended the money had been repaid through direct transfers from Colby to Deborah's individual bank account, a payment on Deborah's mortgage, and payment of approximately half of the cost of a boat lift at Deborah's home.

Deborah testified that she and Stephen had an agreement during the pendency of their divorce proceedings that the $100,000 would be repaid to her. She later admitted, however, that she had stated in a divorce deposition that any money Colby had given her was a loan and that she and Stephen were not speaking during the pendency of their divorce proceedings.

Respondent Trust filed its Petition for Damages against Appellants September 9, 2016. On December 15, 2017, the jury reached a verdict in favor of Respondent Trust on their claims against Appellants for breach of contract and unjust enrichment. This appeal follows.

**Standard of Review**

"[W]hether the jury was properly instructed is a question of law that is reviewed *de novo*." *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014). We review the record in the light most favorable to submission of the instruction. *Hayes v. Price*, 313 S.W.3d 646, 650 (Mo. banc 2010). "Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue." *Id.* We will only vacate a judgment on the basis of instructional error if the error materially affected the merits of the action.

4

*Chavez*, 450 S.W.3d at 294. The party challenging the instruction has the burden of showing the instruction misdirected, misled, or confused the jury, thereby resulting in prejudice. *Id.*

### Point I – Mutually Exclusive Inconsistent Theories of Recovery

In their first point on appeal, Appellants contend the circuit court erred in giving verdict directing Instructions No. 6 and No. 8 (breach of contract), and Instructions No. 10 and No. 11 (unjust enrichment),[3] arguing the instructions submitted mutually exclusive and inconsistent theories of recovery thereby misstating applicable law, misdirecting the jury, and resulting in prejudicial error.

At the instruction conference, the court advised the parties it would be submitting Instruction No. 6 and No. 8 patterned from MAI 26.06 regarding breach of bilateral contracts. Appellants objected on the grounds there was insufficient evidence of breach of contract or any other claim made by Plaintiff, and that breach of contract instructions should not be packaged with unjust enrichment instructions (No. 10 and No. 11) as the two claims were inconsistent. Appellants argued that, because Respondent Trust took the position that a contract was breached, Respondent had an adequate remedy at law with its breach of contract claim, and an equitable, unjust enrichment instruction should not also be presented to the jury. Appellants contended this would give the jury a roving commission to find for Respondent Trust even if it found there was never a contract. The court submitted both claims to the jury.

> Under the doctrine requiring election of inconsistent theories of recovery,
>
> a party must elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the trier of fact. If two counts are so inconsistent that proof of one necessarily negates, repudiates, and disproves the other, it is error to submit them together. The determination of when two theories are inconsistent is heavily dependent upon the

---

[3] Instructions 6 and 10 regard defendant Colby, and instructions 8 and 11 regard defendant Honest Policy.

5

facts of the case. Theories are inconsistent and require an election only if, in all circumstances, one theory factually disproves the other.

*Trimble v. Pracna*, 167 S.W.3d 706, 711 (Mo. banc 2005). "[T]he election of theories doctrines are intended to prevent a plaintiff from recovering more than one full recovery for the same harm." *Id.* Where there is independent and conflicting evidence to support either of two factual scenarios which would make a submissible case or defense, submission of both theories is routinely approved. *Cook v. Holcomb*, 854 S.W.2d 78, 81 (Mo. App. 2002). The election of theories doctrine primarily applies in cases where the jury is asked to "'draw diametrically opposite inferences from a *single set of facts.*'" *Butts v. Express Personnel Services*, 73 S.W.3d 825, 838 (Mo. App. 2002) (overruled on other grounds) (quoting *Cook*, 854 S.W.2d at 81 (emphasis original)).

Instruction No. 6 was as follows (Instruction No. 8 was substantially the same but substituted Honest Policy as defendant):

> Your verdict must be for Plaintiff and against Defendants Thomson on the claim of breach of contract if you believe:
>
> First, Plaintiff and Defendant Thomson entered into an agreement whereby Plaintiff agreed to loan Defendant Thomson $100,000 and Defendant Thomson agreed to repay the $100,000 loan within four years with 7% interest per year; and
>
> Second, Plaintiff performed Plaintiff's agreement, and
>
> Third, Defendant Thomson failed to perform Defendant Thomson's agreement, and
>
> Fourth, Plaintiff was thereby damaged.
>
> Unless you believe Plaintiff is not entitled to recover by reason of Instruction No. 9.

Instruction No. 9 advised the jury, "Your verdict for breach of contract must be for Defendants if you believe that Defendants repaid the money transferred to Honest Policy, Inc. in full."

6

Instruction No.10 was as follows (Instruction No.11 was substantially the same but substituted Honest Policy as defendant):

> Your verdict must be for Plaintiff and against Defendant Thomson on the claim of unjust enrichment if you believe:
>
> First, Plaintiff conferred a benefit on Defendant Thomson by paying Defendant Honest Policy Inc. $100,000;
>
> Second, Defendant Thomson acknowledged or recognized that a benefit was conferred;
>
> Third, Defendant Thomson accepted and retained the benefit; and
>
> Fourth, Defendant Thomson was thereby unjustly enriched.

Given the evidence presented at trial and the litigants at issue, submission of both the contract theory and the unjust enrichment theory was not improper. Appellants admitted receiving $100,000 but alleged the money came directly from Stephen and Deborah and not Respondent Trust. Colby testified the $100,000 was a personal investment/loan/gift from Stephen and Deborah and that Respondent Trust had no part in the transaction. To support his claim, Colby noted that the money came directly from Stephen and Deborah's joint bank account. Stephen, however, testified that the money was a loan from Respondent Trust, not an investment/loan/gift from Stephen and Deborah. Stephen authorized the loan as trustee of Respondent Trust. The proceeds of stocks designated for Respondent Trust were placed into Stephen's personal account upon liquidation, rather than Respondent Trust, because this was the only way to sidestep trust transfer rules and allow immediate transfer to Appellants to meet Appellants' urgent need for funds.

We find trial evidence supporting the factual scenario offered by Stephen that the $100,000 came from Respondent Trust, as well as independent, conflicting evidence supporting the factual scenario that the $100,000 came directly from Stephen and Deborah. Notably, the jury was not

7

constricted to believing only the diametrically opposed scenarios posed by each party. "[A] jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part." *Meyers v. Southern Builders, Inc.*, 7 S.W.3d 507, 514 (Mo. App. 1999) (citing *Capriglione v. Southwestern Bell Telephone Co.*, 376 S.W.2d 205, 206[2] (Mo. 1964). Ultimately, the jury was entitled to reach any reasonable conclusions given the facts presented. Given the evidence, the jury could have believed a hybrid of the two stories. One reasonable hybrid is that a contract was never formed between Appellants and Respondent Trust (Colby's scenario, in part) but that Appellants still knowingly accepted $100,000 from Respondent Trust and were enriched such that failure to return the money would be unjust (Stephen's scenario, in part).

While it is true that a plaintiff cannot recover under an equitable theory when he/she has entered into an express contract for the same subject matter for which he/she seeks to recover, it is also true that where there is no express contract then an equitable remedy may lie. *See Grisham v. Mission Bank*, 531 S.W.3d 522, 538 (Mo. App. 2017). To prevent unjust enrichment, the law may imply a contract where no express contract exists. *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. 2014). Here, the evidence lent itself to various factual scenarios that supported both contract and implied contract theories.

Appellants do not dispute the sufficiency of evidence to submit both the contract claim and the unjust enrichment claim to the jury but argue that "whether there was substantial evidence to support both theories of recovery is immaterial and irrelevant" because the two theories are inconsistent. Considering the evidence before the jury, we disagree that submission of both theories caused the jury to reach an inconsistent result. Although unjust enrichment implies a contract where none exists, the nonexistence of a contract is not an actual element of unjust enrichment requiring consideration by the jury; the elements of unjust enrichment include a benefit

8

given, appreciated, and unjustly retained. Hence, the existence of a contract does not negate, repudiate, or disprove that a benefit was conferred, recognized, and unjustly retained.[4] Had there been a stipulation, or no dispute, as to the existence of a contract, we agree that the unjust enrichment instruction would have been superfluous. Here, because Appellants disputed the existence of a contract and the evidence allowed for the jury to agree with Appellants on that issue but still find Appellants unjustly enriched at Respondent Trust's expense, it was not improper to submit both breach of contract and unjust enrichment claims to the jury. Both issues were pled and, given the evidence, proper for consideration.

We disagree with Appellants' assertion that the instructions, as submitted, make it impossible to know what the jury concluded. Again, nothing within the unjust enrichment instructions require the jury to conclude no contract existed. By finding for Respondent Trust on both the breach of contract and unjust enrichment claims, it is clear the jury concluded that Appellants breached an agreement to repay Respondent Trust $100,000 with interest, and that a $100,000 benefit from Respondent Trust was recognized and unjustly retained by Appellants. There is nothing inconsistent with or incomprehensible about these conclusions.

The circuit court did not err in giving verdict directing instructions regarding both breach of contract and unjust enrichment as the evidence at trial did not render the theories mutually exclusive or inconsistent.

---

[4] "The law of restitution is ill-defined, and there are no rules for determining when there has been unjust enrichment. Recovery of benefits has been granted in many cases involving mistake, fraud, deceit, when a contract is not performed as planned, and in other instances in which it is alleged that one has unjustly benefited at the expense of another." *Farmers New World Life Ins. Co., Inc. v. Jolley*, 747 S.W.2d 704, 705 (Mo. App. 1988); "The right to restitution based upon unjust enrichment is not confined by the form of action or by the traditional limits of law or equity jurisdiction. It operates on equitable principles, but draws its source from law as well as equity. It cuts across contract and tort and stands separately." *Petrie v. LeVan*, 799 S.W.2d 632, 635 (Mo. App. 1990).

9

Point one is denied.

## Point II – Conjunctive Instructions

Appellants contend in their second point on appeal that the circuit court erred in giving verdict directing Instructions No. 6, No. 8, No. 10, and No. 11 because such directed the jury to find for Respondent Trust if it found the existence of a contract, and also if it found there was no contract, thereby submitting both theories of recovery in the conjunctive in violation of MAI 1.02. Appellants argue prejudice resulted from the erroneous instructions because the instructions failed to inform the jury it could not find for Respondent Trust on both, mutually inconsistent theories.

Appellants failed to preserve this claim. "To preserve a claim of instructional error, a specific objection must be made stating 'distinctly the matter objected to and the grounds of the objection.' The same objection must also be raised in the motion for a new trial." *Carroll v. Kelsey*, 234 S.W.3d 559, 562 (Mo. App. 2007) (quoting Rule 70.03). "Timely objections to an instruction are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." *Ross-Paige v. Saint Louis Metropolitan Police Department*, 492 S.W.3d 164, 170 (Mo. banc 2016).

Appellants' objections to Instructions No. 6, No. 8, No. 10, and No. 11 were that there was insufficient evidence of a breach of contract or any other claim made by Respondent Trust, and that breach of contract instructions should not be packaged with unjust enrichment instructions as the two claims were inconsistent. Appellants did not assert that the claims were violative of MAI 1.02 as conjunctive submissions.

Point two is denied.

10

## Point III – One Verdict Form

In their third point on appeal, Appellants contend the circuit court erred in submitting conjunctive instructions prohibited by MAI 1.02 in one verdict form thereby forcing the jury to find a verdict in favor of Respondent Trust on two separate claims and making it impossible to determine what the jury did in fact find.

Appellants waived this claim. At the instruction conference the court gave Appellants the option of a single damages instruction and verdict director for all claims and defendants, or separate verdict directors (which included damages instructions) for each claim. Although Appellants disagreed that the unjust enrichment claim should be submitted at all,[5] Appellants agreed that, based on the court's ruling allowing submission of both breach of contract and unjust enrichment, there would be a single verdict form and single damages instruction.[6] The specific claims of error Appellants now raised on appeal were not raised with the trial court.

Point three is denied.

---

[5] The arguments Appellants make on appeal as to why single instructions would have also been improper primarily relate to Appellants' contention that Respondent Trust was required to elect a theory of recovery prior to submission. We addressed this issue in Point I.

[6] There were four separate verdict directors – two for breach of contract (one against Colby and one against Honest Policy), and two for unjust enrichment (one against Colby and one against Honest Policy) – submitted on a single verdict form. The completed verdict form separately indicated that the jury found in favor of Respondent Trust on each of the four verdict directors (finding both breach of contract and unjust enrichment against Colby, and separately finding both breach of contract and unjust enrichment against Honest Policy). A single damages instruction was given. There is no argument that the damages instruction stated the improper measure of damages on any of the submitted theories, that the evidence was insufficient to support the damages award on one or more of the submitted theories, or that Respondent Trust recovered duplicative damages.

11

## Conclusion

The circuit court's judgment is affirmed.

_Anthony Rex Gabbert_
Anthony Rex Gabbert, Judge

All concur.