

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

D.W., a Minor Child, by and through )
her Natural Parent and Next Friend, )
L.W., )
                          )
            Respondent, )     **WD87137**
v. )
                          )     **OPINION FILED:**
                          )     **April 22, 2025**
HOGAN PREPARATORY )
ACADEMY, INC., et al., )
                           )
             Appellants. )

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Sarah Castle, Judge

**Before Division Three:** W. Douglas Thomson, Presiding Judge, and
Karen King Mitchell and Thomas N. Chapman, Judges

Hogan Preparatory Academy, Inc. (Hogan),[1] and Douglas Bliss, a former teacher,

appeal from a judgment in favor of D.W., a former student, on her claim against Hogan

for sex discrimination under the Missouri Human Rights Act (MHRA) and her claim

against Bliss for battery. Hogan and Bliss raise seven points on appeal. They assert trial

---

[1] Hogan Preparatory Academy, Inc., serves students grades K-12 at three public charter schools in Kansas City, Missouri: an elementary school, a middle school, and a high school.

court error in (i) denying Hogan's motions for directed verdict and judgment notwithstanding the verdict (JNOV) because D.W. failed to make a submissible case for sex discrimination and punitive damages (Points I and II, respectively) and (ii) admitting evidence that Bliss experienced erections during class and pushed another student (Points III and IV, respectively). Hogan and Bliss claim instructional error due to insufficient evidence of future damages and punitive damages (Points V and VI, respectively). Finally, Hogan and Bliss claim trial court error in denying their motion for new trial because the cumulative effect of the foregoing errors deprived them of a fair trial (Point VII). As explained below, we do not believe any of the points merit relief. Thus, we affirm.

## Background

In March 2018, Bliss was a sixth-grade social studies teacher at Hogan Middle School (Hogan Middle), and D.W. was a student in his class. After school on March 12, 2018, D.W. went to Bliss's classroom for help with her classwork. According to D.W., during the fifteen minutes she was in his classroom, Bliss told her to close the door and, when she approached his desk with a question about an assignment, he rubbed her right upper thigh and suggested that it could be their "little secret." D.W., by and through her mother, subsequently brought a claim against Hogan for sex discrimination in a place of public accommodation under the MHRA and a claim against Bliss for battery.[2] D.W. sought both compensatory and punitive damages against Hogan and Bliss.

---

[2] D.W. also brought claims against Hogan Middle, its principal, and vice-principal for negligence and negligent supervision, but the trial court granted a motion for directed verdict on those claims, and they were not submitted to the jury for consideration.

A jury trial was held January 3-6, 2023.  D.W. offered testimony that she experienced uncontrollable crying, nightmares, and suicidal thoughts following the March 12 incident and, roughly a year later, was diagnosed with "other specified trauma disorder."  She also offered testimony that Bliss had previously pushed another sixth-grade girl when that girl refused to leave Bliss's classroom.  Hogan investigated the pushing incident and concluded that Bliss engaged in inappropriate physical contact with the other girl.  Although Bliss was placed on paid administrative leave while Hogan investigated the pushing allegation, Bliss was not disciplined in connection with that incident.  D.W. also offered testimony that Bliss wore tight-fitting clothing, flexed his muscles, experienced erections in class, and massaged students' shoulders, calves, and thighs during class.

Bliss denied any wrongdoing, but he admitted that touching a student on her upper thigh would constitute a violation of Hogan's policy against sexual harassment.  On March 13, the day after D.W. disclosed the incident to Hogan Middle, her mother and her mother's boyfriend attacked Bliss in his classroom.  As a result of the injuries he sustained, Bliss was placed on medical leave for the remainder of the semester.[3]  D.W. was suspended for ten days for "put[ting] her hands" on Bliss during the attack.

Hogan offered video from a hallway camera showing that, on March 12, D.W. appeared to enter Bliss's classroom after school and exit his classroom 38 seconds later.  D.W. claimed that she returned to Bliss's classroom later that same afternoon and that is

---

[3] Four days before the incident involving D.W., Bliss submitted his resignation to Hogan Middle, effective at the end of the semester.

3

when he touched her, but Hogan's former principal testified that the only video showing D.W. near Bliss's classroom after school was the 38-second video, which was the only video preserved by Hogan and available at trial.

Although they denied the underlying conduct, three witnesses for Hogan acknowledged that touching a student on her upper thigh would constitute a violation of Hogan's policy against sexual harassment. An independent licensed professional counselor called by Hogan testified that D.W. "has some behavioral and psychological issues . . . [but] whatever happened to [D.W.] happened before March 2018."

Both the Children's Division of the Missouri Department of Social Services and the Kansas City Police Department (KCPD) investigated the March 12 incident, and both closed their files without making any findings. Hogan did not disclose to Children's Division or KCPD Hogan's prior determination that Bliss had engaged in inappropriate physical contact with another female student, even though the information would have been relevant to the investigations.

At the conclusion of D.W.'s evidence and again at the conclusion of all the evidence, Hogan and Bliss moved for a directed verdict on punitive damages, arguing that there was insufficient evidence to submit the issue of punitive damages to the jury. The court denied both motions.[4]

---

[4] At the conclusion of D.W.'s evidence, Hogan also made an oral motion for a directed verdict on the issue of negligence; the court denied that motion. At the conclusion of all the evidence, Hogan made an oral motion for directed verdict "on the issue of liability." In making the latter motion, Hogan's counsel stated, "On the negligence count and the MHRA count, both of them under these circumstances require constructive knowledge on the part of Hogan . . . and the administrators at Hogan . . . .

4

The jury found Hogan liable for sex discrimination under the MHRA and awarded D.W. $350,000 in compensatory damages and $350,000 in punitive damages. The jury found Bliss liable for battery and awarded D.W. $250,000 in compensatory damages; the jury found Bliss not liable for punitive damages.

On February 3, 2023, the trial court entered judgment for D.W. on her MHRA claim against Hogan and her battery claim against Bliss, but that judgment did not include dollar amounts for the compensatory damages or punitive damages awarded by the jury. On March 30, 2023, the trial court issued an order awarding D.W. $554,616.00 in attorney's fees and $8,867.63 in costs and denying Hogan's and Bliss's joint motion for a new trial and Hogan's motions for JNOV on liability and punitive damages.

Hogan and Bliss appealed. But this Court dismissed the appeal for lack of appellate jurisdiction because there was no final judgment memorializing the amount of damages awarded. *L.W. ex rel. D.W. v. Hogan Preparatory Acad., Inc.*, 687 S.W.3d 472, 476 (Mo. App. W.D. 2024). On April 10, 2024, the trial court issued a second amended judgment reflecting the amount of actual and punitive damages awarded by the jury. This appeal follows.

Additional facts will be provided in the analysis, as necessary, to address the points raised on appeal.

---

And there's been no evidence of their constructive knowledge." As noted previously, the court granted Hogan's motion for directed verdict on D.W.'s negligence claims, but the court denied Hogan's motion for directed verdict on her MHRA claim.

**Analysis**

Hogan and Bliss raise seven points on appeal. They assert trial court error in (i) denying Hogan's motions for directed verdict and JNOV because D.W. failed to make a submissible case for sex discrimination and punitive damages (Points I and II, respectively) and (ii) admitting evidence that Bliss experienced erections during class and pushed another sixth-grade girl (Points III and IV, respectively). Hogan and Bliss claim instructional error due to insufficient evidence of future damages and punitive damages (Points V and VI, respectively). Finally, Hogan and Bliss claim trial court error in denying their motion for new trial because the cumulative effect of the foregoing errors deprived them of a fair trial (Point VII).

I. **The issue of whether D.W. made a submissible case for sex discrimination against Hogan[5] was not preserved for appellate review (Point I).**

In the first point, Hogan alleges trial court error in denying its motions for directed verdict and JNOV because D.W. failed to make a submissible case for sex discrimination in that she did not show she was treated differently because of her sex.[6]

---

[5] Although in the first point relied on Appellants refer to error in denying "Defendants'" (in the plural) motion for directed verdict and JNOV, the argument portion of the brief refers only to Hogan and asks that judgment be entered in favor of Hogan on D.W.'s MHRA claim.

[6] Specifically, Hogan argues that D.W. failed to provide *direct* evidence of sex discrimination. But direct evidence of discrimination is not required under the MHRA. In fact, most MHRA plaintiffs "necessarily rely on inferences rather than direct evidence." *Holmes v. Kansas City Mo. Bd. of Police Comm'rs*, 364 S.W.3d 615, 628 (Mo. App. W.D. 2012). "Direct evidence is not common in discrimination cases because [defendants] are shrewd enough not to leave a trail of direct evidence." *Id.* (quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 n.4 (Mo. banc 2007)). "Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those

Before we consider the merits of Point I, "we must first consider whether the issue is preserved for our review." *Wolf v. Midwest Nephrology Consultants, P.C.*, 487 S.W.3d 78, 83 (Mo. App. W.D. 2016). Because a JNOV "is a motion to have judgment entered in accordance with a motion for directed verdict, 'a sufficient motion for a directed verdict is required to preserve the motion for [JNOV] and for appeal.'" *Id.* (quoting *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 43 n.21 (Mo. banc 2013)). "Rule 72.01(a) requires that a motion for directed verdict 'state the specific grounds therefore.'" *Id.* (quoting Rule 72.01(a)).[7] "A party cannot save an insufficient motion for directed verdict by making specific allegations in the motion for JNOV." *Id.* at 83-84 (quoting *Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.*, 396 S.W.3d 467, 471 (Mo. App. E.D. 2013)). "Issues not raised in a motion for directed verdict, but raised in a motion for JNOV, are not preserved for appellate review of the motion for JNOV." *Id.* at 84 (quoting *Wagner v. Mortg. Info. Servs., Inc.*, 261 S.W.3d 625, 639 n.13 (Mo. App. W.D. 2008)).

Neither of Hogan's motions for directed verdict raised the error alleged in Point I—that D.W. failed to make a submissible case for sex discrimination because she did not show she was discriminated against based on her sex. Instead, Hogan moved for

proposals would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (involving a Title VII sexual harassment claim). Hogan reasons that, because Bliss testified that he is gay, the inference of discrimination does not apply in this case. We are dubious of this argument, but we need not address it further because Hogan failed to preserve the issue of submissibility of D.W.'s sex discrimination claim.

[7] All rule references are to the Missouri Supreme Court Rules (2022).

a directed verdict "on the issue of liability." In making that motion, Hogan argued, "On the negligence count and the MHRA count, both of them under these circumstances require constructive knowledge on the part of Hogan . . . and the administrators at Hogan . . . . And there's been no evidence of their constructive knowledge." Hogan did not argue in support of either motion for directed verdict that D.W. failed to present evidence that she was treated differently because of her sex.

Hogan's failure to raise the issue of the submissibility of D.W.'s sex discrimination claim as a basis for its motions for directed verdict precluded Hogan from obtaining a JNOV on that basis. Likewise, Hogan is precluded from obtaining appellate review of the trial court's failure to enter a JNOV in Hogan's favor.

Point I is denied.[8]

## II. The trial court did not err in denying Hogan's motions for directed verdict and JNOV or in giving Instruction No. 11 because D.W. made a submissible case on punitive damages against Hogan (Points II and VI).

In Point II, Hogan asserts trial court error in denying its motions for directed verdict and JNOV because D.W. failed to make a submissible case for punitive damages against Hogan. In Point VI, Hogan claims the trial court erred in giving Instruction

---

[8] Hogan argues that D.W. waived this preservation argument because she did not raise it in her suggestions in opposition to their motions for JNOV or during argument on those motions. But respondents such as D.W. are not subject to the same preservation-of-error requirements as appellants. *See Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 526 (Mo. App. W.D. 2022) ("Rules requiring that claims of error be preserved in the circuit court do not apply equally to appellants and respondents. Generally, the requirement that claims first be raised in the circuit court is applied to *appellants* . . . .") (emphasis in original).

No. 11 due to insufficient evidence of punitive damages. We discuss these two points together, beginning with Point II.

"The standard of review of a trial court's denial of motions for directed verdict and [JNOV] are treated the same." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 711 (Mo. App. E.D. 2020). "We must determine whether the plaintiff made a submissible case." *Id.* "Whether there is sufficient evidence to support an award of punitive damages is a question of law, and [our] review is *de novo*." *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 520 (Mo. banc 2009). We "view[] the evidence in the light most favorable to the verdict, and we give the plaintiff the benefit of all reasonable inferences, disregarding all conflicting evidence and inferences." *Anslinger v. Christian Hosp. Ne.-Nw.*, 687 S.W.3d 180, 183 (Mo. App. E.D. 2024). "We will reverse the jury's verdict only in the complete absence of probative facts to support the jury's conclusion." *Id.*

"A submissible case for punitive damages requires clear and convincing proof that the defendant intentionally acted either by wanton, willful or outrageous acts, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Brovont v. KS-1 Med. Servs., P.A.*, 622 S.W.3d 671, 699 (Mo. App. W.D. 2020). "The defendant must have intentionally committed a wrongful act without just cause or excuse." *Id.*

> Whether there is sufficient evidence to support an award of punitive damages is a question of law. We review the evidence presented to determine whether, as a matter of law, it was sufficient to submit the claim for punitive damages. In doing so, we review the evidence and all reasonable inferences in the light most favorable to submissibility. A submissible case is made if the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, it was highly

9

probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference.

*Id.* at 699-700 (quoting *Mignone v. Mo. Dep't of Corr.*, 546 S.W.3d 23, 41 (Mo. App. W.D. 2018)).

Hogan asserts that D.W. failed to make a submissible case for punitive damages because there was no clear and convincing evidence of Hogan's evil motive, outrageous conduct, or reckless indifference to D.W.'s rights. But a "plaintiff may . . . show the discriminatory conduct supporting punitive damages by circumstantial evidence." *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 629 (Mo. App. W.D. 2012). D.W.'s "evidence in support of her MHRA claim may also meet her burden for submitting punitive damages to the jury." *Id.*; *see also Baldridge v. Kansas City Pub. Schs.*, 552 S.W.3d 699, 712-13 (Mo. App. W.D. 2018) (evidence used to support a claim of harassment can be considered in connection with a claim of punitive damages). "The rationale for allowing the jury to make reasonable inferences in determining liability for punitive damages is the same as that for the substantive claim: [defendants] may act to prevent the development of direct evidence and a clear evidentiary trail of discriminatory intent is rare." *Holmes*, 364 S.W.3d at 629.

Hogan articulates two grounds for its challenge to the submissibility of punitive damages. First, Hogan relies on the fact that the jury did not award punitive damages against Bliss, the person whose conduct is at the center of the case, to support Hogan's argument that there was insufficient evidence to submit punitive damages against Hogan to the jury. "When an employer concedes vicarious[] liability for the acts of its

10

employee[,] 'all that is necessary to award punitive damages against the employer is . . . that [the employee's] actions meet the level justifying punitive damages.'" *Koon v. Walden*, 539 S.W.3d 752, 775 (Mo. App. E.D. 2017) (quoting *Flood ex rel. Oakley v. Holzwarth*, 182 S.W.3d 673, 680 (Mo. App. S.D. 2005)). Hogan does not directly argue on appeal that Bliss's conduct did not meet the level justifying punitive damages.[9] Instead, Hogan points to the fact that the jury did not award punitive damages against Bliss as reflecting on the sufficiency of the evidence.

We reject Hogan's novel argument that a jury's verdict as to the employee on a punitive damages claim controls the issue of submissibility of a punitive damages claim against the employer. It is the role of the appellate court to determine whether the trial court erred in denying the motion for directed verdict, a decision made by the trial court before the jury begins deliberations. Therefore, we look to the evidence in the record at that time.[10] "Generally, the decision to award punitive damages is peculiarly committed

---

[9] Although Hogan does not specifically argue that the facts presented do not make a submissible punitive damages claim against Bliss, the record contains sufficient evidence to submit such a claim. There was testimony that, while D.W. was alone with Bliss in his classroom, he told her to close the door and, when she approached his desk with a question about an assignment, he rubbed her right upper thigh and suggested that it could be their "little secret." There also was testimony that, less than two months earlier, Bliss had engaged in inappropriate physical contact with another female student.

[10] Obviously, Hogan did not rely on the jury's verdict on the punitive damages claim against Bliss in support of its directed verdict motion because the jury had not yet issued its verdict. Nor did Hogan raise the jury's verdict on the punitive damages claim against Bliss in support of its motion for JNOV on punitive damages against Hogan. Because a JNOV is a motion to have judgment entered in accordance with a motion for directed verdict, issues raised for the first time in a motion for JNOV are not preserved for appellate review. *Wolf v. Midwest Nephrology Consultants, P.C.*, 487 S.W.3d 78, 83-84 (Mo. App. W.D. 2016). Therefore, it is questionable whether Hogan could have raised the jury's verdict in the punitive damages claim against Bliss in support of its

11

to the jury and the trial court's discretion." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 810 (Mo. App. W.D. 2008) (quoting *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 661 (Mo. App. W.D. 1997)). Here, the jury could have declined to award punitive damages against Bliss for a variety of reasons. We decline to find that the trial court erred in submitting the issue of punitive damages against Hogan to the jury simply because the jury did not award punitive damages against Bliss.[11]

---

JNOV motion. Yet, as it stands, this argument was raised for the first time on appeal, which raises the question of whether the issue was preserved for our review. This incongruity points up an inherent problem with Hogan's reliance on the jury's verdict on the punitive damages claim against Bliss to support its sufficiency of the evidence argument as to the punitive damages claim against Hogan.

[11] In response to this first ground, D.W. argues that what Hogan is really attempting to argue for the first time on appeal is a claim of inconsistent verdicts but, as D.W. points out, such a claim must be made before the jury is discharged or the claim is waived. *See, e.g., Massood v. Fedynich*, 530 S.W.3d 49, 59-60 (Mo. App. W.D. 2017) ("[T]he general rule is that an objection to inconsistency in verdicts must be made before the jury is discharged. If such an objection is not made at this time[,] the error is deemed waived.") (quoting *Day Advert., Inc. v. Devries & Assocs., P.C.*, 217 S.W.3d 362, 368 (Mo. App. W.D. 2007)). At oral argument, however, counsel for Hogan expressly stated that Hogan was not asserting a claim of inconsistent verdicts on appeal but, instead, was arguing that the jury's decision to find Bliss not liable for punitive damages supported Hogan's argument that D.W. failed to make a submissible case for punitive damages against Hogan. Therefore, we do not address whether the appropriate way to raise a challenge to the award of punitive damages against Hogan based on the jury finding Bliss not liable for punitive damages would have been as a claim of inconsistent verdicts.

Along the same lines, we note that the *McGinnis* Doctrine is inapplicable here. Under the *McGinnis* Doctrine, "when a claim is submitted on the theory of respondeat superior and the jury returns inconsistent verdicts, exonerating the employee, but holding against the employer, the court must grant the employer judgment notwithstanding the verdict." *Burnett v. Griffith*, 739 S.W.2d 712, 713 (Mo. banc 1987)). Hogan does not invoke the *McGinnis* Doctrine in this case, and we have found no case law applying the *McGinnis* Doctrine in a situation where an employee is found liable but is absolved of liability for punitive damages, as is the case here.

Second, Hogan contends that evidence of its conduct, in and of itself, is insufficient to support submission of punitive damages to the jury. Viewed in the light most favorable to submissibility, the evidence showed that, less than two months before the incident involving D.W., Hogan investigated Bliss for pushing another female student. Hogan concluded that Bliss's action constituted inappropriate physical contact with the student, but Bliss was not disciplined or even counseled following the investigation. Hogan's human resources director at the time testified that Bliss should have been disciplined. But Bliss testified that he did not even recall being advised of the results of the investigation. From that evidence, the jury could have inferred that, had Hogan disciplined Bliss following the pushing incident, he may not have made inappropriate physical contact with a second female student (D.W.). Hogan's failure to discipline Bliss also could have supported an inference that Hogan did not prioritize the safety and well-being of Bliss's female students, including D.W.

In addition, evidence of Hogan's conduct toward D.W. after the alleged incident involving Bliss could have been relied upon by the jury to support an award of punitive damages. *See Ellison v. O'Reilly Auto. Stores, Inc.*, 463 S.W.3d 426, 436 (Mo. App. W.D. 2015) (finding employer's post-incident conduct supported submission of punitive damages). The evidence showed that, the day after D.W. disclosed the March 12 incident, her mother and her mother's boyfriend attacked Bliss in his classroom. Hogan suspended D.W. for ten days for "put[ting] her hands" on Bliss during the attack. Hogan did not interview D.W. to get her side of the story before suspending her. Evidence that

13

Hogan disciplined D.W. for putting her hands on Bliss could support an inference that Hogan was punishing her for reporting Bliss's conduct.

There also was evidence from which the jury could have inferred that Hogan acted intentionally to impede investigation of the March 12 incident and to conceal the truth about what occurred that day. At trial, Hogan's former principal testified that he spent roughly 40 hours reviewing video of the hallway outside Bliss's classroom to try to confirm D.W.'s story that she spent roughly fifteen minutes alone with Bliss in his classroom after school on March 12.[12] According to the former principal, the only video showing D.W. near Bliss's classroom that day after school was the 38-second video played for the jury; and, for that reason, it was the only video Hogan preserved and disclosed. D.W. testified that the 38-second video was "not the right video" in that it showed only the first of two times she went to Bliss's classroom the afternoon of March 12, and the underlying incident occurred during the second time. The issue of the "missing" video was largely one of witness credibility, and the jury was free to believe D.W. and disbelieve the former principal. If the jury found D.W.'s testimony credible, the jury could infer that Hogan intentionally destroyed the full video to discredit D.W.'s account of events.

Additionally, Children's Division and KCPD investigated the March 12 incident. Both agencies ultimately closed their files without making any findings. But Hogan did

---

[12] The former principal spent so much time reviewing video because D.W. initially reported that the encounter with Bliss occurred on March 14, so the principal watched video from that day and others before D.W. disclosed that the encounter occurred on March 12.

not disclose to either agency the school's prior determination that Bliss had engaged in inappropriate physical contact with another female student. Representatives of both agencies testified that such information would have been relevant to their investigations. And their testimony could have supported an inference that Hogan intentionally withheld relevant information to influence the outcome of Children's Division's and KCPD's investigations.

From the evidence adduced at trial and the reasonable inferences therefrom, a jury could have inferred that Hogan engaged in outrageous conduct either through intentional wrongful acts or through the reckless disregard of D.W.'s rights. Because this is not a case involving the "complete absence of probative facts to support the jury's conclusion" as to punitive damages, we decline to reverse the jury's verdict. *Anslinger*, 687 S.W.3d at 183.

In its reply brief, Hogan asserts that, in determining the submissibility of punitive damages, we should not consider Hogan's actions, apart from Bliss's conduct, because the relevant jury instructions (Instruction No. 11 and, by incorporation, Instruction No. 8) focused solely on Bliss's conduct and did not address Hogan's actions. But, an argument raised for the first time in a reply brief is not preserved. *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 585 n.7 (Mo. banc 2023) ("[a]ssignments of error set forth for the first time in the reply brief do not present issues for appellate review") (quoting *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995)). Had Hogan preserved this argument, we would reject it because the instructions were not challenged, and we read them to be broad enough to allow consideration of Hogan's actions. Instruction No. 11 (punitive damages

15

against Hogan)[13] refers to "the conduct of Defendant Hogan . . . as submitted in Instruction Number 8" (MHRA claim against Hogan).[14]  Although Instruction No. 8 does not describe any conduct by Hogan, instead focusing solely on Bliss's conduct, when read together, Instruction Nos. 8 and 11 did not clearly limit the jury to considering only the conduct of Bliss.

Thus, we conclude that D.W. made a submissible case on punitive damages and the trial court did not err in denying Hogan's motion for directed verdict and JNOV.

Point II is denied.

---

[13] In full, Instruction No. 11 stated,

If you find the issues in favor of [D.W.] and if you believe the conduct of Defendant Hogan[] as submitted in Instruction Number 8 was outrageous because of [Hogan's] evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find [D.W.] is entitled under Instruction Number 10, you may award [D.W.] an additional amount as punitive damages in such sum as you believe will serve to punish [Hogan] and to deter [Hogan] and others from like conduct.

[14] In full, Instruction No. 8 provided,

Your verdict must be for [D.W.] against [Hogan] if you believe:

*First*, [D.W.] was subjected to unwelcome sexual harassment by Defendant Bliss, and

*Second*, [D.W.'s] sex actually played a role in and had a determinative influence on such action, and

*Third*, the unwelcome sexual harassment denied [D.W.] full and equal use and enjoyment of any of the accommodations, advantages, facilities, services, or privileges at [Hogan's] school, and

*Fourth*, such conduct directly caused damage to [D.W.].

(Emphasis in original.)

16

For their sixth point, Hogan and Bliss claim trial court error in giving Instruction No. 11 because, they argue, there was insufficient evidence of punitive damages. Thus, just like their challenge in Point II, their claim in Point VI relates solely to the sufficiency of the evidence to support the award of punitive damages against Hogan. Because we already determined in Point II that the evidence was sufficient to support submission of punitive damages to the jury, the instructional challenge raised in Point VI is meritless.

Point VI is denied.

### III. The trial court did not err in admitting evidence that Bliss experienced erections during class and previously pushed another sixth-grade girl (Points III and IV).

In Point III, Hogan and Bliss assert trial court error in admitting evidence that Bliss experienced erections during class. And, in Point IV, Hogan and Bliss allege error in admitting evidence that Bliss pushed another sixth-grade girl. We address these points together because the same legal analysis applies to both points.

"We review a trial court's ruling on the admission of evidence for an abuse of discretion." *Watson v. City of St. Peters*, 599 S.W.3d 479, 485 (Mo. App. E.D. 2020). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *Id.* Hogan and Bliss "bear[] the burden of showing not only that the trial court abused its discretion, but also that the abuse of discretion prejudiced [them]." *Id.* "When reasonable persons can differ about the propriety of the trial court's action, we cannot say that the trial court abused its discretion." *Id.*

17

"To be admissible, evidence must be both logically and legally relevant." *Mansfield v. Horner*, 443 S.W.3d 627, 651 (Mo. App. W.D. 2014). "Evidence is logically relevant if it tends to make the existence of any consequential fact more probable or less probable than it would be without the evidence, or it tends to corroborate evidence that is relevant and bears on the principle issue of the case." *Alhalabi v. Mo. Dep't of Corr.*, 662 S.W.3d 180, 190 (Mo. App. W.D. 2023). "Evidence is legally relevant when its probative value outweighs its prejudicial effect." *Id.*

### A. Testimony that Bliss experienced erections during class was both logically and legally relevant to D.W.'s sex discrimination claim.

Hogan and Bliss argue that evidence of Bliss's alleged erections was not logically relevant because D.W. offered no evidence that the erections were sexual in nature, nor did the alleged erections make it more probable that Bliss engaged in the conduct at issue here. Hogan and Bliss further assert that testimony about the alleged erections was not legally relevant because the undue prejudice arising from such salacious evidence far outweighed its probative value. We disagree.

At trial, Bliss denied experiencing erections during class. On appeal, Hogan and Bliss argue that, even if the erections occurred, they were "random erections" which are "very common, completely normal, and . . . totally non-sexual." Neither Hogan nor Bliss offered any evidence to support their claim that the erections were random and non-sexual.

Evidence of Bliss's erections during class was logically relevant because it provided the jury with a sense of the atmosphere in Bliss's sixth-grade classroom.

Testimony about the erections, when coupled with evidence that Bliss wore tight clothing, flexed his muscles, and massaged students' shoulders, calves, and thighs during class, would help explain why D.W. would interpret the March 12 incident as sexual in nature. And, if the erections were as innocuous as Hogan and Bliss now claim, they could have offered evidence to that effect, but they chose not to do so. In fact, Bliss himself testified that displaying an erection in class would constitute a violation of Hogan's policy against sexual harassment.

Testimony about the erections was not unduly prejudicial. Evidence of the erections was just part of wider ranging evidence of Bliss's appearance and conduct in the classroom, yet Hogan and Bliss single out the erections for challenge on appeal. And, although the jury found Bliss liable for battery, the jury declined to impose punitive damages on Bliss, suggesting that the jury found him responsible for the March 12 incident itself and no other conduct.

Although "reasonable persons can differ about the propriety of the trial court's action, we cannot say that the trial court abused its discretion," *Watson*, 599 S.W.3d at 485, by admitting evidence that Bliss experienced erections during class.

Point III is denied.

### B. Testimony that Bliss pushed another sixth-grade girl was both logically and legally relevant to D.W.'s sex discrimination and battery claims.

Hogan and Bliss contend that testimony indicating Bliss pushed another sixth-grade girl two months before the incident underlying this case was not logically relevant because the two events were not substantially similar. Hogan and Bliss further

allege that the probative value of such testimony was outweighed by its prejudicial effect. Again, we disagree.

In their opening brief, Hogan and Bliss identify several differences between the incident involving the other student and the one involving D.W.—the former took place during school in front of a class of potential witnesses and was disciplinary in nature, while the latter occurred after school with no witnesses and was sexual in nature. But, in both instances, Bliss engaged in inappropriate physical contact with one of his sixth-grade female students while at school. The fact that Bliss touched the first female student inappropriately (and was not disciplined for doing so) makes it more likely that he would engage in similar conduct again. Additionally, the first incident put Hogan on notice that Bliss could potentially resort to inappropriate physical contact with a female student again. And, the fact that Bliss continued to deny that he had inappropriately touched another female student, despite the results of Hogan's investigation of the pushing incident, went to Bliss's credibility. Thus, evidence of the first incident was logically relevant.

Likewise, evidence of the earlier encounter with the other student was legally relevant because its value in proving that Bliss would touch a female student inappropriately outweighs the prejudicial impact of the evidence. The jury heard testimony about the circumstances of the pushing incident and was free to assign whatever weight to that evidence the jury deemed appropriate.

We see nothing in the record indicating that the trial court abused its discretion in admitting evidence that Bliss inappropriately touched another sixth-grade female student.

20

Point IV is denied.

## IV. The trial court did not err in giving Instruction Nos. 10 and 15 because there was substantial evidence from which the jury could find future damages (Point V).

For their fifth point, Hogan and Bliss claim the trial court erred in giving Instruction Nos. 10 and 15[15] because those instructions were not supported by sufficient evidence of D.W.'s future damages. We disagree.

The parties disagree about the applicable standard of review for Point V. Hogan and Bliss argue that we should review this claim of error under the *de novo* standard of review because "[w]hether the jury was properly instructed is a question of law that [we] review[] *de novo*." *Zerpa v. XPO Logistics Freight, Inc.*, 662 S.W.3d 1, 5 (Mo. App. W.D. 2022) (quoting *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014)). D.W. argues for an abuse of discretion standard, claiming that, while the *de novo*

---

[15] Instruction No. 10, the damages instruction for D.W.'s MHRA claim against Hogan, stated,

> If you find in favor of [D.W.], then you must award [D.W.] such sums as you believe will fairly and justly compensate [D.W.] for any actual damages and any past *and future* emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-economic losses as a direct result of the occurrence mentioned in the evidence.

(Emphasis added.) Similarly, Instruction No. 15, the damages instruction for D.W.'s battery claim against Bliss, stated,

> If you find in favor of [D.W.], then you must award [D.W.] such sum as you believe will fairly and justly compensate [D.W.] for any damage you believe [D.W.] sustained and is reasonably certain to sustain in *the future* as a direct result of the occurrence mentioned in the evidence.

(Emphasis added.)

21

standard applies when there is a challenge to the language of the instruction, when the challenge is to the submissibility of the instruction, the standard is abuse of discretion. We need not resolve this dispute, however, because under either standard, the motion court did not err.

"We review the record in the light most favorable to submission of the instruction." *Id.* "Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue." *Id.* (quoting *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010)). "We will only vacate a judgment on the basis of instructional error if the error materially affected the merits of the action." *Id.* "The party challenging the instruction has the burden of showing the instruction misdirected, misled, or confused the jury, thereby resulting in prejudice." *Id.*

Point V fails for two reasons. First, the record contains substantial evidence from which the jury could reasonably find that future damages were warranted. D.W. testified that, four years after the underlying incident, she experienced a mental breakdown at school while watching a video about sexual assault and harassment. Afterwards, she underwent additional mental health treatment and restarted medication. From D.W.'s testimony about her experience four years after the underlying incident, the jury could infer that she would continue to be triggered in the future and need additional treatment. "Long continuation of pain attributable to the act that is the subject of a trial is sufficient to warrant an instruction on damages attributable to future pain." *Stevens v. Craft*, 956 S.W.2d 351, 356 (Mo. App. S.D. 1997).

22

Additionally, a licensed psychologist who interviewed D.W. testified that, given D.W.'s age and the nature of the incident involving Bliss, the incident would be preserved in D.W.'s amygdala, a part of the brain where trauma persists, and that future experiences could retrigger the emotional response, which is exactly what happened, according to D.W. From the psychologist's testimony, the jury could infer that D.W. may suffer future emotional pain and suffering as a result of the March 12 incident.

Second, the record here is silent as to whether the jury awarded any future damages at all. According to the verdict, the jury awarded D.W. $350,000 in actual damages. The verdict is not itemized, so the record does not indicate whether the jury awarded any future damages and, if so, in what amount. The absence of an itemized verdict "does not enable us to determine what award [the jury] made for future pecuniary damages." *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 199 (Mo. App. W.D. 2006) (quoting *Byrd v. Burlington N. R.R.*, 939 S.W.2d 416, 418 (Mo. App. E.D. 1996)). In the absence of information about how the jury arrived at its total award for actual damages, prejudice arising from the inclusion of "future damages" in the instructions would be difficult to establish. *Id.* And speculation that the jury actually awarded D.W. any future damages would be insufficient to warrant a new trial, which is the relief Hogan and Bliss request on appeal.

Point V is denied.

## V. The trial court did not err in denying the joint motion for new trial (Point VII).

For their final point, Hogan and Bliss claim trial court error in denying their joint motion for new trial because the cumulative effect of the trial court's errors deprived them of a fair trial, citing the errors alleged in their first six points on appeal.

We review the trial court's "denial of a motion for new trial for an abuse of discretion." [16] *Moore v. Monsanto Co.*, 699 S.W.3d 516, 524 (Mo. App. E.D. 2024). "An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable that the ruling indicates a lack of careful deliberate consideration and shocks the sense of justice." *Id.* (quoting *Bair v. Faust*, 408 S.W.3d 98, 102 (Mo. banc 2013)). We will reverse the trial "court's denial of a motion for new trial only if we find a substantial or glaring injustice." *Id.* (quoting *Beverly v. Hudak*, 545 S.W.3d 864, 869 (Mo. App. W.D. 2018)).

"Although a new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal, any number of non-errors cannot add up to an error." *Brummett v. Burberry Ltd.*, 597 S.W.3d 295, 312 (Mo. App. W.D. 2019) (quoting *City of Kansas City v. Powell*, 451 S.W.3d 724, 743 (Mo. App. W.D. 2014)). None of the first six points on appeal has merit; there is no cumulative error here. *Id.*

Point VII is denied.

---

[16] Hogan and Bliss request plain error review of Point VII. But they raised the issue of cumulative error in their motion for new trial, so plain error review is not applicable. Instead, we review this point under the less stringent abuse of discretion standard.

## Conclusion

Finding no error, the judgment of the trial court is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Thomas N. Chapman, Judge, concur.